**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**JAN 4 2005**

**PATRICK FISHER**
**Clerk**

PUBLISH

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

ALISON JENNINGS,

       Plaintiff-Appellant,

v.

MARCELLUS RIVERS; ALVIN
PORTER,

       Defendants,

   and

J. B. FLOWERS; EVAN HOWELL,

       Defendants-Appellees.

No. 04-6000

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF OKLAHOMA**
**(D.C. No. 01-CV-1786-L)**

---

Submitted on the brief:

Mark Hammons and Tamara L.F. Gowens of Hammons & Associates, Oklahoma
City, Oklahoma, for Plaintiff-Appellant.

---

Before **LUCERO** , **McKAY** , and **PORFILIO** , Circuit Judges.

---

**McKAY,** Circuit Judge.

In this civil diversity case, the district court entered a default judgment against defendants J.B. Flowers and Evan Howell when they failed to participate in the litigation. At the scheduled damages hearing, plaintiff and her counsel arrived approximately twenty minutes late, to learn that the district court had awarded zero dollars in damages based on a failure of proof. The district court denied plaintiff's subsequent motion for relief. On appeal, we conclude that the district court abused its discretion in denying plaintiff's motion to set aside the judgment. We reverse and remand for further proceedings. [1]

I. **Relevant facts and proceedings**

Plaintiff sued four defendants under diversity jurisdiction, alleging that, as a group, defendants sexually assaulted her. [2] Two of the defendants entered into a settlement with Ms. Jennings. Mr. Flowers and Mr. Howell, however, did not even answer the complaint. The district court granted plaintiff's motion for default against them.

---

[1] After examining the briefs and appellate record, this panel has determined unanimously to grant the parties' request for a decision on the briefs without oral argument. *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument.

[2] The sexual encounter which led to this lawsuit is described in a related case, *Jennings v. City of Stillwater,* 383 F.3d 1199 (10th Cir. 2004).

When attorney Charles Prather entered an appearance on Mr. Flowers'
behalf and filed an answer, however, the district court set aside the default against
Mr. Flowers. But then Mr. Flowers did not attend a court-ordered settlement
conference. The district court issued an order for Mr. Flowers to show cause why
default should not be re-entered. At the show-cause hearing, Mr. Prather and
Mr. Mark Hammons, plaintiff's counsel, were present; Mr. Flowers was not.
Mr. Prather explained to the court that Mr. Flowers knew the consequences of
non-appearance but that "he [was] through with this case" and "he just wasn't
going to show." Aplt. App. at 46. Mr. Prather also said that he would "like to be
able to withdraw with the necessary papers," but that if the court wished, he
would "stay on through [a damages] hearing." *Id.* Based on Mr. Prather's
statements, the district court found that Mr. Flowers had notice of the hearing and
intentionally failed to appear. It entered default against him and set the matter for
a hearing on damages, with regard to Mr. Flowers and Mr. Howell, at 1:30 p.m.
on Thursday, October 2, 2003. The court later issued a written order
memorializing its finding of default and the setting of the hearing. Mr. Prather
did not participate further in the case, but did not file a motion to withdraw.

At the time scheduled for the damages hearing, only Mr. Howell was
present, appearing pro se after traveling from his home in Baton Rouge to court in
Oklahoma City. The district court checked with chambers' staff and learned that

Mr. Hammons had not telephoned to say that he and plaintiff would be late. The court then called the hearing to order, "award[ed] no damages to the plaintiff for her failure to present evidence," and closed the matter. *Id.* at 55. The court told Mr. Howell that "[i]t pays to show up." *Id.* The court recessed at 1:46 p.m., sixteen minutes after the hearing was to begin, *id.*; and entered a written order of judgment in favor of plaintiff for zero dollars in damages.

In the meantime, plaintiff's counsel, Mr. Hammons, was laboring under the mistaken belief that the hearing was scheduled for 2:00 p.m. He and his client arrived at the courthouse approximately four minutes after the hearing concluded. Mr. Howell had apparently departed and the district court refused to hold an ex parte discussion with plaintiff and Mr. Hammons. Later that afternoon, Mr. Hammons filed a motion asking the district court to set aside its judgment and schedule another damages hearing.

Though plaintiff's request did not denominate the rule under which she sought relief, the district court treated it as a motion to alter or amend the judgment pursuant to Fed. R. Civ. P. 59(e). The court denied the motion as it related to Mr. Howell, Aplt. App. at 68-69, but did not rule on it relative to Mr. Flowers. Concluding that it would be unjust to rule without Mr. Flowers' receiving notice of the situation, the court reserved a ruling until "Mr. Flowers and his attorney" were served with a copy of the motion and had sufficient time

-4-

to respond. *Id.* at 69. The court warned that the motion would be denied unless plaintiff provided proof of mailing within five days of its order.

The next day, plaintiff's attorney notified the court that he had mailed a copy of the motion to "Pro se defendant" Flowers at his home address. *Id*. at 71. After the five-day time period had elapsed, the district court ruled. The order pointed out plaintiff's failure to meet the additional requirement of serving Mr. Prather, as counsel of record, and "reluctantly" denied the motion for relief with respect to Mr. Flowers. *Id.* at 82. In this court, plaintiff appeals the entry of judgment for zero damages and also the denial of her postjudgment motion. Neither Mr. Howell nor Mr. Flowers has appeared or participated in this appeal.

## II. Judgment for zero damages

We generally examine a factual determination on the appropriate amount of damages for clear error. *Nieto v. Kapoor,* 268 F.3d 1208, 1221 (10th Cir. 2001). It is axiomatic that a plaintiff bears the burden of providing evidence in support of her damages claim. *O'Neal v. Ferguson Constr. Co*., 237 F.3d 1248, 1256 (10th Cir. 2001). Here, due to the absence of plaintiff and her counsel, proof of damages was totally lacking. Consequently, there was no factual error in the district court's finding of zero damages. It was simply one of "the procedural consequences of proper, if perhaps unintended, litigation actions or decisions." *Sec. Nat'l Bank v. John Deere Co.*, 927 F.2d 519, 521 (10th Cir. 1991).

Moreover, it was not unreasonable for the court to open the hearing, note the absence of plaintiff, and conclude the hearing with an award of zero damages. A district court is far too busy to conduct a search for missing attorneys and litigants or wait an indefinite amount of time in anticipation of a belated appearance. "[A] workable system of justice requires that litigants not be free to appear at their pleasure." *Cessna Fin. Corp. v. Bielenberg Masonry Contracting, Inc.*, 715 F.2d 1442, 1444 (10th Cir. 1983). "The burden of litigation is too pressing, and trial courts' patience has too long been tried, to permit parties to evade the consequences of neglecting their cases." *M.E.N. Co. v. Control Fluidics, Inc.*, 834 F.2d 869, 873 (10th Cir. 1987). Though the district court's determination was severe, it was not erroneous and is not subject to reversal on appeal.

## III. Orders denying plaintiff's postjudgment motion

### A.    Order concerning Mr. Howell

Plaintiff's case, however, did not end with the court's entry of judgment. In the belief that the hearing began one-half hour later than the scheduled time, plaintiff and Mr. Hammons appeared at the courthouse within minutes of the time the court left the bench. The same day, Mr. Hammons filed an undenominated motion for relief from the judgment. The motion described counsel's personal "failure to correctly note the time and the error of relying on his memory rather

-6-

than checking the docket." Aplt. App. at 60. Mr. Hammons recognized the inconvenience to the court and emphasized that he, not his client, was the wrongdoer who should bear the consequences of his mistake. The motion suggested that Mr. Flowers (who had not appeared) would not be prejudiced by a rescheduling of the hearing and that Mr. Hammons could remedy any prejudice to Mr. Howell by paying the expenses and costs associated with a return to court. In response, Mr. Howell filed a pro se objection describing his travel difficulties–leaving a job placement workshop early and requiring his father to miss work to drive him 1200 miles roundtrip for the court appearance. [3]

The district court denied plaintiff's postjudgment motion. On appeal, this court reviews that ruling for abuse of discretion. *Adams v. Reliance Standard Life Ins. Co.*, 225 F.3d 1179, 1186 n.5 (10th Cir. 2000). "'The abuse of discretion standard includes review to determine that the discretion was not guided by erroneous legal conclusions.'" *United States v. Johnston,* 146 F.3d 785, 792 (10th Cir. 1998) (quoting *Koon v. United States*, 518 U.S. 81, 100 (1996)).

---

[3] Mr. Howell also expressed his resentment at Mr. Hammons' asking for reconsideration of the zero damage award, but not the default judgment of liability. We note, however, that a default judgment may be set aside on grounds of excusable neglect only upon motion of the affected party. Fed. R. Civ. P. 60(b). Since Mr. Howell failed to make and support such a motion, the default judgment establishes his liability to plaintiff.

The Federal Rules of Civil Procedure provide that a postjudgment motion may "aris[e] under either Rule 59(e) (motion to alter or amend the judgment) or Rule 60(b) (relief from judgment for mistake or other reason). The[se] two rules serve different purposes and produce different consequences, both substantive and procedural." *Sanders v. Clemco Indus.*, 862 F.2d 161, 168 (8th Cir. 1988) (citation and footnote omitted). Here, plaintiff's motion asked the court to reopen the judgment based on counsel's mistake, inadvertence, or excusable neglect: the reasons expressed in Rule 60(b)(1). It asked for an opportunity to present her damages case in the first instance, not the "reconsideration of matters properly encompassed in a decision on the merits" contemplated by Rule 59(e). *Osterneck v. Ernst & Whinney*, 489 U.S. 169, 174 (1989) (internal quotation marks omitted).

Notwithstanding the clear import of plaintiff's motion, the district court construed it as a motion to alter or amend the judgment pursuant to Rule 59(e). And a Rule 59(e) motion is normally granted "only to correct manifest errors of law or to present newly discovered evidence." *Adams*, 225 F.3d at 1186 n.5 (internal quotation marks omitted). Consequently, the court reviewed the circumstances, determined that plaintiff had "not demonstrated that a manifest error of law ha[d] occurred," so there was no "cause for vacating the . . . order . . . as it relates to defendant Howell." Aplt. App. at 68-69.

The district court construed plaintiff's filing as a motion to alter or amend the judgment pursuant to Rule 59(e) because it was filed within ten days of the entry of the judgment. Aplt. App. at 68. As an abstract matter, the district court's treatment of the motion finds support in our prior case law. We have stated that a postjudgment motion "'filed within ten days of the district court's entry of judgment . . . is treated as a motion to alter or amend the judgment under Fed. R. Civ. P. 59(e).'" *Hawkins v. Evans,* 64 F.3d 543, 546 (10th Cir. 1995) (quoting *Hatfield v. Bd. of County Comm'rs for Converse County*, 52 F.3d 858, 861 (10th Cir. 1995)); *see also, e.g., Wright v. Abbott Lab., Inc.*, 259 F.3d 1226, 1232 (10th Cir. 2001) (stating that "post-judgment motions filed within ten days of the final judgment should, where possible, be construed as 59(e) motions to avoid otherwise endless hassles over proper characterization") (internal citation and quotation omitted); *Phelps v. Hamilton*, 122 F.3d 1309, 1324 (10th Cir. 1997) (noting "[t]his court has previously held that regardless of how it is styled or construed . . . , a motion filed within ten days of the entry of judgment that questions the correctness of the judgment is properly treated as a Rule 59(e) motion") (internal quotation and citation omitted).

These sweeping pronouncements may have left room for confusion. A district court's analysis of a postjudgment motion in the first instance requires a more nuanced approach than the statements would indicate. The practice of

construing posttrial motions as Rule 59(e) motions was not designed to constrain a district court's substantive analysis of a postjudgment motion. Rather, it was devised for purposes of appellate review under a previous version of Fed. R. App. P. 4(a). *See Derrington-Bey v. Dist. of Columbia Dep't of Corrs.,* 39 F.3d 1224, 1226 n.† (D.C. Cir. 1994); Fed. R. App. P. 4 note to Paragraph (a)(4), 1993 Amendment. *Id.*[4]

District courts should evaluate postjudgment motions filed within ten days of judgment based on the reasons expressed by the movant, not the timing of the

---

[4] Before 1993, a Rule 59(e) motion tolled the thirty-day period for appeal, but a Rule 60(b) motion did not. *Grantham v. Ohio Cas. Co.*, 97 F.3d 434, 435 (1996). As a result, an appeal from the denial of a motion "construed as a Rule 59(e) motion permit[ted] consideration of the merits of the underlying judgment, while an appeal from the denial of a Rule 60(b) motion [did] not itself preserve for appellate review the underlying judgment." *Hawkins*, 64 F.3d at 546. In 1993, the addition of Fed. R. App. P. 4(a)(4)(A)(vi) placed a Rule 60 motion filed within ten days of entry of judgment on equal footing with a Rule 59 motion. *See Grantham*, 97 F.3d at 435; *Hatfield*, 52 F.3d at 861 & n.1; *Derrington-Bey*, 39 F.3d at 1226. Accordingly, there is no longer a distinction between Rule 59(e) and Rule 60(b) motions filed within ten days of entry of judgment for purposes of finality of the original judgment or calculation of the time within which a party may appeal. Though the Tenth Circuit cases construing postjudgment motions under Rule 59(e) may have used categorical language, they actually concerned a determination on the timeliness and scope of the appeal. *See, e.g., Desta v. Ashcroft,* 329 F.3d 1179, 1183 (10th Cir. 2003); *Computerized Thermal Imaging, Inc. v. Bloomberg, L.P.*, 312 F.3d 1292, 1296 (10th Cir. 2002); *Wright,* 259 F.3d at 1232-33; *Phelps,* 122 F.3d at 1323; *United States v. Emmons*, 107 F.3d 762, 764 (10th Cir. 1997); *Hawkins,* 64 F.3d at 546; *Buchanan v. Sherrill*, 51 F.3d 227, 230 (10th Cir. 1995).

motion.  Here, plaintiff's motion plainly sought relief from judgment based on attorney mistake:  grounds for relief under Rule 60(b)(1).  Accordingly, it should have been analyzed under the standards applicable to that rule.  The district court's use of the criteria established for Rule 59(e) constitutes legal error.

Rule 60(b)(1) provides that "[o]n motion and upon such terms as are just, the court may relieve a party or a party's legal representative from a final judgment . . . . for the following reasons:  (1) mistake, inadvertence, surprise, or excusable neglect . . . ."  It "is an extraordinary procedure" which "'seeks to strike a delicate balance between two countervailing impulses:  the desire to preserve the finality of judgments and the incessant command of the court's conscience that justice be done in light of *all* the facts.'"  *Cessna Fin. Corp.,*  715 F.2d at 1444 (quoting  *Seven Elves, Inc. v. Eskenazi*, 635 F.2d 396, 401 (5th Cir. 1981) (additional internal quotation marks omitted)).  The rule "should be liberally construed when substantial justice will thus be served."  *Id.*

"The guidelines governing a district court's consideration of a Rule 60(b)(1) motion . . . are well established."  *Id.* at 1445.  Whether the movant has demonstrated  "mistake, inadvertence, surprise, or excusable neglect" is an issue to be "litigated on the merits."  *Id.*  "The trial court must determine whether excusable neglect has in fact been established, resolving all doubts in favor of the party seeking relief."  *Id.*

"[F]or purposes of Rule 60(b), 'excusable neglect' is understood to encompass situations in which failure to comply with a . . . deadline is attributable to negligence." *Pioneer Inv. Servs. Co. v. Brunswick Assoc. Ltd. P'ship*, 507 U.S. 380, 394 (1993). More generally, "[t]he ordinary meaning of 'neglect' is 'to give little attention or respect' to a matter, or, closer to the point for our purposes, 'to leave undone or unattended to *esp[ecially] through carelessness* .' The word therefore encompasses both simple, faultless omissions to act and, more commonly, omissions caused by carelessness." *Id.* at 388 (quoting Webster's Ninth New Collegiate Dictionary 791 (1983) and adding emphasis). [5]

The determination of whether neglect is excusable "is at bottom an equitable one, taking account of all relevant circumstances surrounding the party's omission." *Pioneer Inv. Servs. Co.* , 507 U.S. at 395 (discussing application of the excusable neglect standard of Fed. R. Bankr. P. R. 9006(b)(1)).

---

[5] We note that a panel of this court has stated that "inadvertence by an attorney is not a basis for relief under Rule 60(b)(1)." *Servants of the Paraclete v. Does* , 204 F.3d 1005, 1009 (10th Cir. 2000). While we spoke categorically in that case, we had no intention of rejecting the plain language of the rule. We note that the Rule 60(b) movant in *Servants of the Paraclete* sought to extend the time for appeal by requesting the district court to vacate a judgment. The comment concerning attorney inadvertence is surrounded by more specific statements about Rule 60(b) as a basis for an extension of appeal time. Moreover, it is part of an alternative holding that the movant was too late to reopen the judgment under Fed. R. App. P. 4(a)(6). *Id.* at 1009-10.

Relevant factors include "the danger of prejudice to the [opposing party], the length of the delay and its potential impact on judicial proceedings, the reason for the delay, including whether it was within the reasonable control of the movant, and whether the movant acted in good faith." *Id.* "'[F]ault in the delay remains a very important factor–perhaps the most important single factor–in determining whether neglect is excusable.'" *United States v. Torres*, 372 F.3d 1159, 1163 (10th Cir. 2004) (quoting *City of Chanute v. Williams Natural Gas Co.*, 31 F.3d 1041, 1046 (10th Cir. 1994). [6] An additional consideration is whether the moving party's underlying claim is meritorious. *See Cessna Fin. Corp.*, 715 F.2d at 1444-45 (discussing, in the context of a motion to set aside a default judgment, the need to avoid frivolous litigation).

A court may take into account whether the mistake was a single unintentional incident (as opposed to a pattern of deliberate dilatoriness and delay), and whether the attorney attempted to correct his action promptly after discovering the mistake. *Hancock v. City of Okla. City*, 857 F.2d 1394, 1396 (10th Cir. 1988). "[A] mistake . . . could occur in any [attorney's] office, no

---

[6] *Torres* required a determination as to whether the appellant in a criminal case satisfied the excusable neglect standard under Fed. R. App. R. 4, allowing a thirty-day extension of the time to appeal. *Id.*, 372 F.3d at 1160. Relying on *Pioneer Inv. Servs. Co.*, 507 U.S. at 392, the court decided that "counsel's misinterpretation of a readily accessible, unambiguous rule cannot be grounds for relief." *Id.* at 1163. Unlike *Torres*, the instant case does not involve a misapplication of a procedural rule.

-13-

matter how well run." *Id. See also D.G. Shelter Prods. Co. v. Forest Prods. Co.*, 769 F.2d 644, 645 (10th Cir. 1985) (observing, in a case dismissed for failure to respond to a motion, that plaintiff's counsel had not committed "an inadvertent slip-up resulting from a date not being entered or being erroneously noted"); *Camps v. C & P Tel. Co.*, 692 F.2d 120, 123 (D.C. Cir. 1981) (stating that "[m]embers of the bar are not invariably punctual, and we are unaware of any general judicial practice of throwing their clients out of court the first time attorneys arrive somewhat late").

In the instant case, the district court has not evaluated the denial of plaintiff's Rule 60(b)(1) motion as to Mr. Howell under the appropriate standards. Although the court stated that the isolated incident of tardiness was "inexcusable," Aplt. App. at 68, it did not support this conclusion with a discussion of the relevant factors. Moreover, the district court did not consider the possibility of other "terms as are just" under which plaintiff could be relieved from final judgment. Fed. R. Civ. P. 60(b). It may be that monetary sanctions assessed against the wrongdoer could assist Mr. Howell with his travel problems, allowing plaintiff's testimony on damages to be presented at an adversary proceeding.

**B.    Order concerning Mr. Flowers**

Plaintiff also requested the district court to set aside the final judgment as to defendant Flowers, who had made a conscious decision to end his participation in the litigation. After plaintiff filed her postjudgment motion, the district court reserved ruling on this aspect of the case. The court ordered Mr. Hammons to send a copy of the motion to defendant's address, and quite properly required notice to Mr. Prather, who remained attorney of record. The court's order warned that, unless service was effected within five days, plaintiff's motion would be denied.

In the time frame set by the district court, Mr. Hammons sent notice only to Mr. Flowers, referring to him as a pro se defendant. Without allowing Mr. Hammons an opportunity to correct the error, the district court denied the motion solely on the grounds of "failure to comply" with the court's directive. As with the Howell ruling, the district court should have weighed and balanced the factors relevant to a Rule 60(b)(1) motion before making its Flowers ruling.

**IV.    Conclusion**

We understand the district court's general exasperation with the actions and omissions of parties and counsel in this case. Nevertheless, the district court did not analyze plaintiff's postjudgment motion under the correct standards.

Accordingly, we must reverse and remand for further proceedings consistent with this opinion.